UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FCA US, LLC,

      Plaintiff,

v.                                                   Case No. 16-11186

Spitzer Autoworld Akron, LLC,                        Sean F. Cox
                                                     United States District Court Judge
      Defendant.
_____/

**<u>OPINION & ORDER</u>**

      This case is a companion case to this Court's Consolidated Dealer Action (Case No. 10-12984).  The Consolidated Dealer Action involved a number of Chrysler dealers and legal issues.  Defendant Spitzer was a dealer who was rejected by Chrysler during its bankruptcy, who then prevailed at its Section 747[1] Arbitration and wants to rejoin the dealer network in Ohio.  Fred Martin is an existing Chrysler dealer in Ohio who opposes (because of increased competition) Spitzer rejoining the network.  In the Consolidated Dealer Action, this Court declared that Section 747 did not preempt the state-law dealer acts of six different states.

      Dealers located in Michigan and Nevada appealed the preemption ruling and won.  Spitzer decided not to appeal any of this Court's rulings, deciding to go ahead with the state-law protest proceeding in Ohio.  But after the Sixth Circuit reversed this Court's preemption ruling as to Michigan and Nevada's state-law dealer acts, Spitzer regretted its decision not to appeal the preemption ruling as to Ohio's act.  Spitzer now refuses to participate in the Ohio Protest

_____

[1]Section 747 of the Consolidated Appropriations Act of 2010.

1

Proceeding, arguing that Section 747 preempts Ohio's dealer act, and that administrative proceeding is now at a standstill.  Chrysler filed this action, seeking a declaration that the Ohio dealer act remains in full force and effect as to Spitzer and the Ohio Protest Proceeding, and an injunction barring Spitzer from relitigating the preemption issue.

As explained below, the Court rejects Spitzer's threshold challenges as to personal jurisdiction, venue, and standing.

As to the merits, the Court concludes that it must grant the relief requested by Chrysler in this action – a declaratory ruling that the Ohio Dealer Act remains in full force and effect with respect to Spitzer and the Ohio Protest Proceeding.  That is because this Court concludes that res judicata, more specifically issue preclusion, applies here such that the issue of whether Section 747 preempts the Ohio Dealer Act is "forever settled" as to Chrysler, Spitzer, and Fred Martin. The Court also concludes that an order enjoining Spitzer from relitigating this Court's preemption ruling in the Ohio Protest proceeding is not barred by the Anti-Injunction Act and shall issue the requested injunction.

## BACKGROUND

This current action is a companion case to this Court's previous Case Number 10-12984 ("the Consolidated Dealer Action"), which consisted of three separate cases that were consolidated by this Court.  The Consolidated Dealer Action ("CDA") has a lengthy procedural history.  The Court includes here a broad overview of that case and information relevant to the issues in the present case.

Section 747 of the Consolidated Appropriations Act of 2010 created an arbitration procedure for automobile dealerships to seek continuation or reinstatement of franchise

2

agreements that had been terminated by Old Chrysler during its bankruptcy proceedings, with

the approval of the bankruptcy court.  Several dealers who had been rejected by Old Chrysler

initiated, and prevailed in, Section 747 arbitrations with the newly-formed Chrysler Group LLC.[2]

Those arbitration determinations gave rise to litigation in this Court because parties impacted by

those determinations disagreed as to what happens next following those Section 747 arbitration

determinations.

Three different cases were filed, Case No. 10-12984, Case No. 10-13290, and Case No.

10-13908.  Those three cases were consolidated by this Court, for all purposes, including trial,

into Case Number 10-12984.  (D.E. No. 92)  In addition to Chrysler, it involved two different

types of dealers: 1) "Rejected Dealers," (ie., a number of dealers who had been rejected during

the bankruptcy proceedings but prevailed in Section 747 arbitrations with Chrysler); and 2)

"Interested Like-Line Dealers" who became parties because they oppose Chrysler establishing or

relocating a dealer who prevailed in a Section 747 arbitration into their area without following

the provisions of state-law dealer acts.

Various state-law dealer acts provide certain protections for existing dealers and allow

them to challenge a manufacturer's establishment or relocation of a dealership within a relevant

market area where the same line make is already represented.[3]

---

[2]Although it has had various names at different times, and is currently FCA US, LLC, for
ease of reference, the Court will refer to it as "Chrysler" in this Opinion & Order.

[3]For example, Michigan's Dealer Act provides protections for existing dealers. It
regulates a manufacturer's establishment or relocation of a dealership within a relevant market
area where the same line make is already represented. *See* Mich. Comp. Laws § 445.1566 & §
445.1576. Before a manufacturer can establish or relocate a dealer into a relevant market area
("RMA"), the manufacturer must do certain things – such as give written notice to existing
dealers within the RMA of its intention to establish or relocate another dealer to the RMA. Those

The state-law dealer acts of six different states ( Michigan, California, Florida, Nevada, Ohio, and Wisconsin) were at issue in the CDA.

The only parties in this case are: 1) Chrysler; 2) Spitzer, a Rejected Dealer who prevailed in its Section 747 and wants to rejoin the dealer network and operate a Chrysler dealership in Ohio; and 3) Fred Martin, an Interested Like-Line Dealer, who currently operates a Chrysler dealership in Ohio and opposes Spitzer rejoining the network.

In 2010 – while the CDA was proceeding – Fred Martin filed a protest with the Ohio Motor Vehicle Dealer Board ("the Ohio Board") under case number 10-12-MVDB-366-JT, pursuant to the state dealership laws of Ohio, seeking to enjoin Spitzer's addition to Chrysler's dealer network (hereinafter the "Ohio Protest Proceeding").

### All Necessary Parties Became Part Of The CDA And The Court Addressed Threshold Issues Of Personal Jurisdiction, Venue And Standing.

In an Opinion & Order issued on May 10, 2011 (D.E. No. 195), the Court addressed Motions to Dismiss that involved personal jurisdiction, venue, and standing.   All necessary parties ultimately were included in the CDA.

### This Court Ultimately Declared That Section 747 Does Not Preempt The State Dealer Laws Of Six States, Including Ohio.

Following discovery, the parties filed numerous summary judgment motions, raising the same issues.  The Court notes three relevant motions here:

Docket Entry No. 231: wherein Spitzer asked this Court to declare that Section 747 preempts the Ohio Dealer Act, and rule that New Chrysler and other dealers waived their right to challenge Spitzer' reinstatement;

---

existing dealers can then challenge that action by filing a declaratory action in circuit court, to determine if good cause exists for the establishment or relocation of the dealer.

Docket Entry No. 228: wherein Chrysler asked the Court to grant summary judgment in its favor and against Spitzer on Count One of its Second Amended Complaint and declare that Section 747 does not preempt the Ohio Dealer Act or permit Chrysler to ignore its obligations under state law; and

Docket Entry No. 215: wherein Fred Martin asked the Court to declare that Section 747 is unconstitutional or, in the alternative, that Section 747 does not preempt the Ohio Dealer Act.

In an Opinion & Order issued on March 27, 2012, this Court ruled on the entire series of

dispositive motions, declaring that:

1) The sole and exclusive remedy for a dealer rejected by Old Chrysler who prevails in a Section 747 arbitration with New Chrysler is a customary and usual letter of intent to enter into a sales and service agreement with New Chrysler.

2) Section 747 does not provide for reinstatement of a dealer rejected by Old Chrysler who prevails in a Section 747 arbitration with New Chrysler.

3) Section 747 does not authorize an award of monetary damages.

4) Section 747 does not provide for judicial confirmation or enforcement and neither the FAA nor the AAA's Commercial Rules govern these statutorily-mandated arbitrations or authorize a party to move to confirm an arbitrator's determination in a Section 747 arbitration.

5) *Section 747 does not preempt the state dealer acts that govern the relationships between automobile manufacturers and dealers in California (Cal. Vehicle Code § 3060 et seq.), Florida (Fla. Stat. § 320.01 et seq.), Michigan (Mich. Comp. Laws § 445.1561 et seq.), Nevada (Nev. Rev. Stat. § 482.36311 et seq.), Ohio (Ohio Rev. Code. § 4517.43), or Wisconsin (Wis. Stat § 218.0101 et seq.).*

(D.E. No. 361 at Pg ID 16481) (emphasis added).  That Opinion & Order further provided:

IT IS FURTHER ORDERED that New Chrysler's motions for summary judgment, seeking summary judgment as to its July 14, 2011 Complaint for Declaratory Judgment against *Spitzer,* BGR and Boucher (D.E. Nos. 228, 243 & 229) are GRANTED. The cross-motions for summary judgment filed by *Spitzer,* BGR, and Boucher (D.E. Nos. 231, 234, & 220) are DENIED.

5

(*Id.* at Pg ID 16482) (emphasis added).[4]

### The Court's Ruling Following The Bench Trial, That Relates To Rejected Dealers Not At Issue Here.

On July 9, 2013, this Court held a bench trial to determine whether Chrysler supplied the Rejected Dealers who prevailed in their Section 747 arbitrations with a "customary and usual letter of intent," as required by the statute. By that time, many of the Rejected Dealers in the consolidated action had reached settlements with Chrysler, and the only Rejected Dealers left were Fox Hill, Village, Jim Marsh, and Livonia. Spitzer was not involved in the bench trial.

In any event, after the bench trial, this Court ruled that those dealers had received the customary and usual LOIs that were required under the statute. The Court then issued a final judgment on August 8, 2013, thereby closing the CDA.

### Several Parties – But Not Spitzer – Appealed To The Sixth Circuit.

Several parties filed three different appeals in the United States Court of Appeals for the Sixth Circuit.

Appellate case 13-2117 was filed by three of the four Rejected Dealers who proceeded to the bench trial (Fox Hills, Village, and Jim Marsh).

Livonia, the third Rejected Dealer who had proceeded to the bench trial, filed its own appeal.

Notably, Spitzer did not appeal any of this Court's rulings. But Fred Martin (an

---

[4]In a footnote, the Court noted that because it had rejected the interpretation of Section 747 advanced by the Rejected Dealers, the Court need not reach the constitutional challenge to the statute. (*Id.* at Pg ID 16468). The Court also made several other rulings that are not relevant to the issues that are now in dispute.

6

Interested Like-Line Dealer in Spitzer's area in Ohio) filed its own appeal, arguing that the

district court erred by not considering its constitutional challenge to Section 747.  In response to

Fred Martin's appeal, Spitzer appeared and "defended § 747's constitutionality and claimed that

Fred Martin lacked standing to raise a constitutional challenge to the act.  Unlike the other

prevailing dealers, Spitzer d[id] not challenge the state dealer protest laws."  *Chrysler Group*

*LLC v. Fox Hills Motor Sales, Inc*., 776 F.3d 411, 422 (6th Cir. 2015).

The Sixth Circuit consolidated all three of the appellate cases and heard oral argument on

August 8, 2014.  During oral argument, Counsel for Spitzer had the following colloquy with the

Court:

> THE COURT: So I understand your position, you don't have a problem with saying the remedy is the LOI?
>
> MR. GIARDINI: I am conflicted, you Honor, *but since we didn't appeal Judge Cox's decision*, that is our official position.  Believe me, my heart is with Livonia and Fox Hills, but I'm sitting with Chrysler.
>
> THE COURT: But your client is willing to deal with just having an LOI as long as the LOI is --
>
> MR GIARDINI: It is.  *We feel we have such a strong position with respect to that LOI, that we just want to get on with it.*  We have been stayed now for three years from even dealing with the protest that Fred Martin filed.  I can't move forward until this matter is decided.  *So we just took the position, look, we'll deal with the protest laws of Ohio.*
>> Our laws are the same as Michigan.  *We are going to be arbitrating basically the same criteria.  In the protest we're going to be dealing with the same criteria.  I guess my feeling is we won once, we'll win twice.*
>> That's really why when Mr. KcKirahan says, I don't understand why any of us are here, honestly, I don't understand why Fred Martin is here.  Because Fred Martin didn't lose anything.  It had a Chrysler Dodge Jeep dealership before the bankruptcy.  It had one after the bankruptcy.  It had one before 747 was passed.  It has one after 747 is passed.  Even if I win my process, it will still have its dealership.
>
> THE COURT: It just doesn't want your competition?

MR. GIARDINI: It just doesn't – which it had for 30 years prior to the Chrysler bankruptcy. Which is another – It's not really relevant to this case.

THE COURT: It's not like he doesn't have standing?

MR. GIARDINI: Your Honor, *I don't think he has standing at all. Now I'll qualify that. If this court were to determine that Ohio's Dealer Act was preempted by 747, then I would argue that he had some standing* because now he has a financial interest involved and he doesn't have any opportunity as a party to deal with it. He has that opportunity. *So if this court decides that Judge Cox was right and that 747 didn't preempt Ohio's law, then --*

THE COURT: *You mean Michigan's law, right?*

MR. GIARDINI: *We have Ohio law, your Honor. Since we didn't appeal that issue, it isn't really before you.* We're dealing 4517.50 of the Ohio Vice [sic] Code in our case.

Fred Martin does not have standing to challenge the constitutionality of this act with Judge Cox's decision and that's what Judge Cox said. *Even if you looked at Fred Martin's pleadings, they clearly indicate that the only reason they're here is because of the possibility that there would be preemption. With that possibility gone* with Judge Cox's decision, they were done. They're out of this thing in terms of being harmed in any way.

THE COURT: Thank you, Counsel.

(D.E. No. 21-3 at Pg ID 318) (emphasis added).

### The Sixth Circuit Reversed And Remanded As To Preemption – But Only With Respect To The State-Law Dealer Acts Of Michigan And Nevada – Not Ohio.

The Sixth Circuit affirmed most of this Court's rulings. For example, it held that "[t]he district court correctly held that § 747 does not constitute an unconstitutional legislative reversal of a federal court judgment, and that the only relief provided to successful dealers under § 747 is the issuance of a 'customary and usual' letter of intent." *Id*. at 415. It also affirmed other rulings that are not relevant to this action. It reversed as to just two aspects.

First, the Sixth Circuit ruled that the district court "properly found that the letters of intent at issue in this case were 'customary and usual,' with the exception of one contractual

provision that requires reversal" as to just one dealer.  *Id*. at 415.  It found that, as to Livonia alone, remand was appropriate so that the district court could consider whether a site-approval provision rendered its particular LOI illusory.  *Id*. at 432-33.

Second, the Sixth Circuit disagreed as to preemption and held that Section 747 "preempts the operation of Michigan and Nevada dealer protest laws."  *Id*. at 430.  That is, it concluded that "application of the state dealer acts *of the two states in question (Michigan and Nevada)* is preempted by" Section 747.  *Id*. at 415.  (emphasis added).

Because no one – including Spitzer – had appealed this Court's preemption rulings regarding the state-law dealer acts of Ohio, California, Florida, or Wisconsin, the Sixth Circuit did not discuss any of those acts or make any rulings regarding those acts.       The Sixth Circuit expressly noted that it was *not considering* the issue of whether Section 747 is preempted by Ohio's state-law dealer act:

> Fox Hills, Village, Jim Marsh and Livonia all argue in favor of preemption. Because these dealerships are located in Nevada and Michigan, we consider their preemption arguments under the laws of those states*.  Spitzer, on the other hand, does not challenge the state dealer protest laws in its home state of Ohio, a point conceded by its attorney at oral argument*.  Accordingly, *we do not consider the preemption argument with respect to Ohio state dealer protest laws.*

*Id*. at 424 n.7 (emphasis added).

The Sixth Circuit only considered the issue of preemption in regard to the state-law dealer acts of Nevada and Michigan and reversed and remanded "so that the district court may enter a declaratory judgment consistent with this opinion *to the effect that the state dealer protest laws in Michigan and Nevada are preempted*."  *Id*. at 434. (emphasis added).

The Sixth Circuit issued its Mandate in the consolidated appeals on March 23, 2015, and the United States Supreme Court denied Chrysler's Petition for Writ of Certiorari.

9

Following remand, after addressing some disputes among the parties which addressed language concerning the LOIs and not preemption, this Court ultimately issued a "Judgment On Remand In Case No. 10-12984" that included the following:

> IT IS FURTHER ORDERED that Judgment is entered in favor of Fox Hills, Village, Jim Marsh, and Livonia on their counterclaim for a declaration that *Section 747 preempts the state dealer laws of Michigan (Mich. Comp. Laws §445.1561 et seq.) and Nevada (Nev. Rev. Stat. §482.36311 et seq.)* and the Court hereby DECLARES that *those two acts are preempted by Section 747.*

(D.E. No. 549 at Pg ID 19077) (emphasis added).  That was issued on June 26, 2015.[5]

**Events In The Ohio Protest Proceeding**

Meanwhile, before the declaratory actions were filed in this Court, the Ohio Protest Proceeding, wherein Fred Martin challenges Chrysler adding Spitzer as a dealer in Ohio, had been filed in Ohio.

Spitzer notes that it raised the issue of preemption before the Ohio Board in the Ohio Protest Proceeding but, before any ruling was made there, the CDA before this Court commenced.  (*See* D.E. No. 26 at Pg ID 466) ("Spitzer immediately raised the issue of preemption with the Ohio Motor Vehicle Dealer Board, but before the Ohio Board could rule on the issue, Chrysler filed its declaratory judgment complaint with this Court.").  Spitzer acknowledges that "Spitzer and the other dealers in Consolidated Case No. 10-cv-12984 agreed that this Court would decide certain issues, one of which was the issue of whether state dealer protest laws, like Ohio's R.C. 4517.50 et seq. were preempted by Section 747 of the Act."  (D.E.

---

[5]In January of 2016, the matter came before the Court again, with respect to a dispute between Chrysler and Village.  That dispute, which was resolved by the parties, does not relate to the issues currently before the Court.

10

No. 21 at Pg ID 246).

The Ohio Protest Proceeding was on hold while the CDA in this Court was proceeding.

On October 6, 2015, Counsel for Spitzer sent a letter to the Chief Administrator of the

Ohio Motor Vehicles Dealer Board regarding the protest proceeding involving Spitzer, Fred

Martin, and Chrysler.  That letter stated:

> I am writing to the Board because all appeals in the declaratory judgment
> action filed by Chrysler in the federal court system have now been exhausted.
> The United States Supreme Court denied certiorari on Fred Martin's
> constitutional challenge to the Dealer Arbitration Act passed by Congress.  With
> that decision, the Supreme Court let stand the decision of the 6th Circuit Court of
> Appeals, which ruled that the Arbitration Act preempted state dealer protection
> laws.  A copy of that decision is attached for the benefit of the hearing officer.
> It is my understanding that dealers in other states, who, like Spitzer, were
> successful in their federal arbitration case have already begun to move forward
> without being forced to go through protest hearings.
> Since Ohio is in the Sixth Circuit, Ohio courts and tribunal are required to
> follow and abide by the Sixth Circuit's decision.
> Therefore, the protest of Fred Martin cannot go forward, since the protest in this case
> would cover the same issues as were decided in the federal arbitration.
> Our agreement was that we would hold all proceedings until the issue of
> preemption was decided.  It has now been decided.
> Fred Martin's protest must be withdrawn or dismissed.
> Spitzer will challenge any attempt to conduct a hearing on this protest by
> filing a request for an injunction in the United States District Court for the
> Northern District of Ohio, Eastern Division.
> Please advise.

(D.E. No. 22-3 at Pg ID 361-62).

On October 26, 2015, Counsel for Fred Martin sent Counsel for Spitzer a letter that

stated, in pertinent part, as follows:

> While the Sixth Circuit Court of Appeals Opinion may bind other states
> regarding preemption, it is not binding on Ohio as the Court only dealt with
> Michigan and Nevada dealer laws.  The Sixth Circuit never determined the issue
> of pre-emption related to Ohio laws.  Thus, the Michigan District Court's ruling
> that state dealer laws are not pre-empted stands as to Ohio law.
> Any attempt by your client to pursue any action based on the 6th Circuit

opinion is barred by the doctrine of res judicata.

. . . .

        Fred Martin will not withdraw its Protest and the Dealer Board should not dismiss based on application of the prevailing law noted above.  In the face of this, if you wish to file an action in the Federal District Court, please do so . . .

(D.E. No. 1-3 at Pg ID 24-25).

### This Separate Action, A Companion Case, Was Filed on April 2, 2016

The Ohio Protest Proceeding was still at a standstill as of April 1, 2016.  On April 1, 2016, Plaintiff Chrysler initiated this civil action by filing a "Complaint For Declaratory Judgment and Injunctive Relief."  (D.E. No. 1).  Chrysler seeks the following relief:

1.     A declaration that the laws of the Ohio Dealer Act remain in full force and effect with respect to Spitzer and the Ohio Protest Proceeding;

2.     An injunction preventing Spitzer from challenging or relitigating this Court's Judgment that Section 747 does not preempt the Ohio Dealer Act; and

3)     Any and all further relief that the Court deems just and reasonable.

(*Id.* at Pg ID 18).

The action was reassigned to this Court as a companion case to Case Number 10-12984.

Fred Martin Motor Company ("Fred Martin") filed a motion seeking to intervene in this action on April 28, 2016.

On May 2, 2016, attorney David Zack entered a general appearance in this case as counsel for Spitzer.  (D.E. No. 9).  Spitzer also filed its Answer and Affirmative Defenses on May 2, 2016 (D.E. No. 10), which included lack of personal jurisdiction and improper venue as defenses.

On May 4, 2016, attorney Anthony Giardini, a second attorney for Spitzer, filed a general appearance in this case as counsel for Spitzer.  (D.E. No. 12).

Fred Martin's unopposed Motion to Intervene was granted on June 1, 2016, after this

12

Court had issued an order to show cause why the motion should not be granted.  (D.E. No. 14).

This Court held a Scheduling Conference with the parties on June 21, 2016, after which it issued the Scheduling Order in this action. (D.E. No. 16).  The parties agreed that the case would be resolved by motions.  Thus, the Scheduling Order does not provide for discovery or witness lists, and simply provides a date of August 15, 2016 for filing motions.

**The Pending Motions Before The Court In This Case**

Each of the three parties in this action (Chrysler, Spitzer and Fred Martin) filed its own dispositive motion.  Chrysler filed a Motion for Judgment on the Pleadings, Spitzer filed a Motion to Dismiss/Motion for Summary Judgment, and Fred Martin filed its own Motion for Summary Judgment.  The motions were fully briefed.  All three motions were heard[6] by the Court on February 2, 2017.

Chrysler's motion presents the two following issues: 1) whether, "based on the doctrines of law of the case, waiver, and judicial admission," Chrysler is "entitled to a declaratory ruling that the Ohio Dealer Act remains in full force and effect with respect to Spitzer and the Ohio Protest Proceeding;" and 2) whether Chrysler is "entitled to an order enjoining Spitzer from challenging or re-litigating this Court's preemption ruling."  (D.E. No. 22 at Pg ID 327).

Fred Martin's Motion is based on the same three theories: 1) law of the case; 2) waiver; and 3) judicial admission.

In its Motion to Dismiss/Summary Judgment Motion, Spitzer asks the Court to dismiss Chrysler's Complaint in this action.  In the alternative, Spitzer asks the Court to enter an order

---

[6]Spitzer filed a motion asking the Court to dispense with oral argument, but the Court denied that motion.  (*See* D.E. Nos. 33 & 34).

"finding that Section 747" "preempts the Ohio's dealer protection law (R.C. 4517.50 et seq)." (D.E. No. 21 at Pg ID 219).

## ANALYSIS

Chrysler filed its "Complaint for Declaratory Judgment and Injunctive Relief" and asks the Court to: 1) issue a declaration that the laws of the Ohio Dealer Act remain in full force and effect with respect to Spitzer and the Ohio Protest Proceeding; and 2) issue an injunction preventing Spitzer from challenging or relitigating this Court's Judgment that Section 747 does not preempt the Ohio Dealer Act. (D.E. No. 1 at Pg ID 18).[7]

Chrysler, Spitzer and Fred Martin have each filed their own dispositive motion. The facts at issue are not in dispute. What is in dispute is the legal import of the rather unusual facts and circumstances that we have here.

## I.   The Court Rejects The Threshold Challenges To Personal Jurisdiction, Venue, And Standing, Made By Spitzer.

In its Motion, which was filed on August 15, 2016 (the last day permitted for filing motions in this case under the Court's Scheduling Order), Spitzer makes three threshold arguments: 1) that this Court lacks personal jurisdiction over it; 2) that venue is improper in this Court; and 3) that both Chrysler and Fred Martin lack standing.

### A.      Personal Jurisdiction and Venue

Spitzer first makes a rather half-hearted challenge to personal jurisdiction, asserting that this Court lacks jurisdiction over it "except to the extent that Spitzer previously consented to this Court's jurisdiction in Case No. 10-cv-12984." (D.E. No. 21 at Pg ID 230). Second, Spitzer

---

[7]Spitzer has not asserted any counterclaims, nor did it file a counter-complaint seeking declaratory or other relief from this Court.

14

argues that this Court "cannot exercise its jurisdiction over [it] pursuant to 28 U.S.C. § 1391," a challenge to venue  (D.E. No. 21 at Pg ID 230).

In response, Chrysler argues that Spitzer, through its actions in this case, has waived both its venue and personal jurisdiction arguments.

In addition, Chrysler argues that even if Spitzer had not waived those defenses in this action, this Court may exercise personal jurisdiction over Spitzer, and venue is proper in this district, for the reasons that the Court set forth in its May 10, 2011, Opinion & Order in the CDA.  (D.E. No. 195 in Case No. 10-12984).[8]

The Court concludes that, even though it included venue and personal jurisdiction defenses in its Answer, Spitzer waived those defenses by its actions in this case.[9]

The requirement that a court have personal jurisdiction is a due process right that may be waived either explicitly or implicitly.  *Gerber v. Riordan*, 649 F.3d 514, 518 (6th Cir. 2011). The actions of a defendant may amount to a legal submission to the jurisdiction of the court.  *Id.* In *Gerber*, the Sixth Circuit considered whether any of the appearances and filings in the district court amounted to legal submission to the jurisdiction of the court.  *Id.*  Notably, the Sixth

---

[8]A number of dealers made personal jurisdiction, venue and standing challenges very early on in the CDA. This Court ruled that venue was proper in this district (*Id*. at Pg ID 3622-23), that the Court could exercise personal jurisdiction against the objecting Rejected Dealers due to their numerous contacts with Chrysler in Michigan (*Id*. at Pg ID 3613-22), and that Chrysler had standing to bring the action (*Id*. at Pg ID 3623-25).

[9]In addition, even if it had not waived those defenses, the Court would find those challenges without merit for the same reasons that the Court rejected such challenges in the CDA. Spitzer submitted to the Court's jurisdiction in the CDA and therefore did not challenge personal jurisdiction or venue.  But the same analysis applies to all of the Rejected Dealers because they all had the same types of contacts with Chrysler in Michigan.

Circuit held that the defendants in that action waived their personal jurisdiction defense "when their attorney entered a general appearance with the district court." *Id.* at 519. That is, it held that "Defendants' filing of a general appearance with the district court constituted a voluntary acceptance of the district court's jurisdiction, and therefore, a waiver of Defendants' personal jurisdiction defense." *Id.* at 520.

In a subsequent Sixth Circuit case, the Court reiterated that *Gerber* "*requir[es]* courts in the Sixth Circuit to exercise personal jurisdiction whenever a defendant's attorney enters a general appearance.*" M&C Corp. v. Erwin Behr GmbH & Co., K.G.*, 508 F. App'x 498, 501 (6th Cir. 2012) (emphasis added). The court noted that the "document held to waive personal jurisdiction in *Gerber* read only this: 'Now comes Richard M. Kerger and enters his appearances as counsel for defendants, James C. Riordan and Steven Locks Press Corp. in this matter.'" *Id.* at 502 n.4. It also noted that the appearances entered by counsel in that case were nearly identical and therefore constituted general appearances. *Id.* at 501-02. The court stated that "[b]ecause *Gerber* is directly on point and because a 'panel of this Court cannot overrule the decision of another panel,' [the defendants] waived personal jurisdiction when their attorneys entered general appearances." *Id.* at 502.

This Court is also bound to follow the rule in *Gerber*. Accordingly, Spitzer waived personal jurisdiction when its attorneys entered general appearances in this action.[10]

Spitzer also waived its improper venue defense. Spitzer had two attorneys file general appearances in this action. When Fred Martin sought to intervene in this action, this Court

---

[10]Spitzer also took additional actions in this case that amount to a legal submission to the Court – such as requesting affirmative relief from this Court.

16

ordered the parties to show cause why Fred Martin should not be permitted to intervene in this case.  Spitzer did not voice any objection, based on venue or otherwise, to having Fred Martin intervene in this case.

Counsel for Spitzer also participated in the scheduling conference in this matter and, along with the other parties, agreed that the case would be resolved by dispositive motions.  It did not advise the Court or the other parties that it had any objection to venue.  And rather than promptly file a motion to dismiss based on venue, or a motion to transfer venue, when this action was filed in April of 2016, Spitzer waited and included that challenge in its motion filed on the very last day permitted for filing dispositive motions in this case – August 15, 2016 – more than four months after the case had been filed.  Moreover, Spitzer's motion requests affirmative relief from this Court. Such actions amount to a waiver of Spitzer's improper venue defense.  *State Auto Ins. Co. v. Thomas Landscaping & Const., Inc.,* 494 F. App'x 550 (6th Cir. 2012).[11]

### B.    Standing

Third, Spitzer asserts that Chrysler and Fred Martin "lack standing to bring this action." (D.E No. 21 at Pg ID 231).  Spitzer states that "[i]n order for a party to have standing, it must demonstrate that it has a real interest in the matter at issue.  *See, Chrysler Grp LLC v. Fox Motor Sales, Inc*., 776 F.3d 411 (6th Cir. 2015) and *Clinton v. City of New York*, 524 U.S. 417, 433 (1998)."  (D.E. No. 21 at Pg ID 232).  Spitzer claims that Chrysler "has no economic interest at

---

[11]In addition, venue in this Court is proper in any event.  As this Court explained in its May 10, 2011 Opinion & Order, under the applicable venue statue, venue can be proper in more than one judicial district.  A substantial part of the events or omissions giving rise to this action, including the events in the CDA and Spitzer's failure to appeal the preemption issue in that case, occurred in this district and therefore venue is proper in this district.

17

stake" and that "[n]o harm can come to [Chrysler] by Spitzer asserting the argument of preemption in Ohio." (*Id*. at Pg ID 232). Spitzer does not explain why it believes that Fred Martin lacks standing.

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.' U.S. Const. art. III, § 2." *National Rifle Assoc. of America v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). "In an attempt to give meaning to Article III's 'case or controversy' requirement, the courts have developed a series of principles termed 'justiciability doctrines.'" *Id*. Those doctrines include both standing and ripeness. "Article III standing requires a litigant to have suffered an injury-in-fact, fairly traceable to the defendant's allegedly unlawful conduct, and likely to be redressed by the requested relief." *Id*.

In this case, Chrysler brings suit under the Declaratory Judgment Act. Declaratory judgments are typically sought before a completed "injury-in-fact" has occurred, but must be limited to the resolution of an "actual controversy." *Id*. When seeking declaratory relief, a plaintiff "must show actual present harm or a significant probability of future harm in order to demonstrate the need for pre-enforcement review." *Id*. "To determine whether a plaintiff has standing to adjudicate an 'actual controversy,' requisite for relief under the Declaratory Judgment Act, one must ask whether the parties have 'adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment' even though the injury-in-fact has not yet been completed." *Id*. at 280.

The parties' actions and statements establish that Chrysler, Spitzer, and Fred Martin have adverse legal interests as to the issue of whether Spitzer can relitigate, in the Ohio Protest Proceeding, the issue of whether Section 747 preempts the Ohio Dealer Act.

18

Indeed, in the CDA appeal, the Sixth Circuit noted that the "increase in direct competition caused by the possible entrance of Spitzer" to Chrysler's dealer network in Ohio "causes Fred Martin a cognizable economic injury." *Chrysler Group LLC*., 776 F.3d at 430-31.

Spitzer has refused to participate in the Ohio Protest Proceeding and has threatened to file suit in federal court to seek an injunction to end the proceeding. (D.E. No. 22-3 at Pg ID 361-62). Meanwhile, Chrysler and Fred Martin wish to proceed in the Ohio Protest Proceeding, but the proceeding remains at a standstill because of this disputed issue. Absent a declaration from this Court, the Ohio Protest Proceeding will not move forward. Both Chrysler and Fred Martin, and Spitzer too, have a concrete interest in having the Ohio Protest Proceeding move forward and come to a resolution.

The Court concludes that the parties have adverse legal interests, of sufficient immediacy, to warrant the issuance of a declaratory judgment and rejects Spitzer's standing challenge.

## II.  The Court Shall Make A Declaratory Ruling That The Ohio Dealer Act Remains In Full Force And Effect With Respect To Spitzer And The Ohio Protest Proceeding.

Chrysler and Fred Martin assert that the Court should declare the relief requested by Chrysler, and they offer various theories to support their position: judicial admission, waiver, and law of the case.

### A.  The Judicial-Admission Theory

Chrysler and Fred Martin assert that Spitzer made a "judicial admission that the Ohio state dealer laws remain in effect with respect to Fred Martin's protest." (*See* Chrysler's Br., D.E. No. 22 at Pg ID 323).

19

Chrysler argues that "Spitzer's statements to the Sixth Circuit are judicial admissions to which Spitzer is conclusively bound.  To be sure, Spitzer's statements deliberately, clearly, and unambiguously informed the Court that it was Spitzer's position that the Ohio state dealer laws applied and were not preempted by Section 747, as this Court held."  (*Id*. at Pg ID 346).

The Court declines to rule that Spitzer made a "judicial admission" that the Ohio state dealer law remains in effect as to Fred Martin's protest.

In order to qualify as a judicial admission, an attorney's statements must be deliberate, clear and unambiguous."  *MacDonald v. General Motors Corp*., 110 F.3d 337, 340 (6th Cir. 1997).  Because of their binding consequences, judicial admissions generally arise only from deliberate voluntarily waivers that expressly concede an alleged fact.  *Id.*

"Unlike admissions of fact, 'legal conclusions are rarely considered to be binding judicial admissions.'" *Marr v. Commonwealth Land Title Ins. Co.*, 307 F. App'x 952, 957 (6th Cir. 2009) (quoting *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)).  "For this reason, where a 'counsel's statements dealt with opinions and legal conclusions," the Sixth Circuit is "reluctant to treat them as binding judicial admissions."  *Id.* Here, Chrysler is asking the Court to rule that Spitzer made "a judicial admission that the Ohio state dealer law remains in effect as to Fred Martin's protest" – which is a legal conclusion – not an alleged fact.  As a result, the Court concludes that the theory of judicial admission does apply under these facts.

## B.    Other Theories

In looking at cases wherein these kinds of issues have been addressed, courts have used the doctrines of waiver, law of the case, judicial admission, and res judicata, in similar ways, to conclude that a party cannot re-litigate an issue that it failed to appeal.  In *Howe v. City of Arkon*,

20

801 F.3d 718, 741-42 (6th Cir. 2015), the Sixth Circuit noted that various courts often refer to the same or similar concepts with different terminology.

> ### 1.      Waiver And Law Of The Case

Directing the Court to cases such as *JGR, Inc*., Chrysler and Fred Martin assert that Spitzer waived its right to challenge this Court's preemption ruling.

*JAR, Inc. v. Thamesville Furniture Indus., Inc*., 550 F.3d 529 (6th Cir. 2008) involved a contract dispute.   The Sixth Circuit ruled that JAR waived its right to seek lost profit damages at a second trial in 2006 because it did not appeal the earlier 2002 jury award of zero lost profits, when it appealed other issues.   The Court explained that:

> A party that fails to appeal an issue "waive[s] his right to raise the [ ] issue [ ] **before the district court on remand or before this court on appeal after remand.** The law-of-the case doctrine bars challenges to a decision made at a previous stage of litigation which could have been challenged in a prior appeal, but were not.

*Id.* at 532 (emphasis added).

Reliance on *JAR* and a waiver theory does not precisely fit the situation here because this is actually a separate case – this is not a situation where the CDA is back before the district upon remand or back before the Sixth Circuit on appeal after remand.

A waiver theory would have fit the situation if Spitzer had asked, following remand, that this Court rule that Ohio's dealer act was not preempted by Section 747.   In that scenario, by failing to appeal the preemption issue, Spitzer would have waived its right to raise that issue before the district court on remand (or before the Sixth Circuit if someone had filed a second appeal following remand in the CDA).

The Court sees a similar kind of disconnect with Chrysler and Fred Martin's reliance on

the law-of- the-case theory. "The law of the case doctrine provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages *in the same case*.'" *Westside Mothers v. Olszewski*, 454 F.3d 532 (6th Cir. 2006) (quoting *Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004)) (emphasis added). "Pursuant to the law of the case doctrine, and the complementary 'mandate rule,' upon remand the trial court is bound to 'proceed in accordance with the mandate and the law of the cases as established by the appellate court.'" *Id.*

"The law of the case doctrine precludes reconsideration of a previously decided issue unless one of three 'exceptional circumstances' exists: (1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice." *Westside Mothers,* 454 F.3d at 538.

This Court had a limited remand (ie., a remand that explicitly outlined the narrow issues to be addressed by this Court upon remand) from the Sixth Circuit in the CDA. That limited remand did not direct or authorize this Court to reconsider whether Section 747 preempts the Ohio Dealer Act. Thus, if upon remand, Spitzer had filed some kind of motion in the CDA asking this Court to rule that Section 747 preempts the Ohio Dealer Act, then the law-of-the-case doctrine would have prevented this Court from doing so. But that is not what we have.

Here, we are not dealing with the "same case," (ie., the CDA). This is a new and separate case, wherein Chrysler and Fred Martin seek: 1) a declaration that the laws of the Ohio Dealer Act remain in full force and effect with respect to Spitzer and the Ohio Protest Proceeding; and 2) an injunction preventing Spitzer from challenging or relitigating this Court's Judgment that

22

Section 747 does not preempt the Ohio Dealer Act, in either the Ohio Protest Proceeding or a new federal case filed by Spitzer.

As the Sixth Circuit has stressed, the purpose "'of the law-of-the-case doctrine is to ensure that the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*.'" *Howe v. City of Arkon*, 801 F.3d 718, 739 (6th Cir. 2015) (citation omitted) (emphasis in original); *see also* Charles Alan Wright, FEDERAL PRACTICE & PROCEDURE § 4478 (2016) ("Law-of-the-case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. They do not apply between separate actions.").

This is not the *same case* (ie., this is not the CDA, it is a new case) and the intent behind filing this new case is to ensure that *other courts or administrative agencies* (i.e., the Ohio Dealer Board and/or a federal court in Ohio) follow this Court's preemption ruling as to the Ohio Dealer Act from the CDA.

Accordingly, the law of the case doctrine,[12] as set forth by the cases above, does not appear to precisely fit the situation we have here.

### 3.    Res Judicata (Specifically, Issue Preclusion)

The doctrine that strikes this Court as the one that best applies to this situation is the doctrine that Fred Martin expressly mentioned in its October 26, 2015 letter to Spitzer – res

---

[12]Spitzer also contends that the law-of-case doctrine should be applied here.  (*See* D.E. No. 37 at Pg ID 586).  Contrary to Spitzer's argument, that doctrine does not aid Spitzer's position in this case because the Sixth Circuit expressly stated that it was not making any preemption ruling as to the Ohio Dealer Act.  Thus, if the law-of-the-case doctrine applies here, it compels the relief requested by Chrysler.  That is because this Court ruled that Section 747 does not preempt the Ohio Dealer Act and Spitzer did not appeal that ruling.

judicata.  (*See* D.E. No 1-3 at Pg ID 24-25 (stating that "While the Sixth Circuit Court of Appeals Opinion may bind other states regarding preemption, it is not binding on Ohio as the Court only dealt with Michigan and Nevada dealer laws.  The Sixth Circuit never determined the issue of pre-emption related to Ohio laws.  Thus, the Michigan District Court's ruling that state dealer laws are not pre-empted stands as to Ohio law" and "Any attempt by your client to pursue any action based on the 6th Circuit opinion is barred by the doctrine of res judicata.").

"Res judicata is often analyzed further to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion.'  Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided."  *Migra v. Warren City Sch. Dist. Bd. of Educ*., 465 U.S. 75, 77 n.1 (1984).

"Under the doctrine of issue preclusion, 'the determination of a question directly involved in one action is conclusive as to that question in a second suit.'"  *Sumeru Health Care Group, L.C. v. Hutchins*, __ F. App'x __, 2016 WL 4073303 at * 3 (6th Cir. Aug. 1, 2016) (quoting *B&B Hardware, Inc. v. Hargis Indus., Inc.*, __ U.S. __, 135 S.Ct. 1293, 1302 (2015)).  "The idea is straightforward: Once a court has decided an issue, it is 'forever settled as between the parties.'"  *B&B Hardware, Inc.,* 135 S.Ct. at 1302.

The Sixth Circuit employs a four-part test to determine if issue preclusion applies: 1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; 2) determination of the issue must have been necessary to the outcome of the prior proceeding; 3) the prior proceeding must have resulted in a final judgment on the merits; and 4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding."  *Sumeru Health Care Group, L.C., supra,* at *3.

Although the parties have not focused on res judicata, this Court may grant summary judgment on a ground not raised by a party, so long as the Court gives the parties notice and an opportunity to respond.  Fed. R. Civ. P. 56(f).

Accordingly, prior to the hearing on the pending motions, this Court issued an order wherein the Court provided the parties with specific questions that the Court intended to ask at the hearing, including whether res judicata applies.  The Court also allowed the parties to file supplemental briefs if they wished to do so.  Both Chrysler and Spitzer filed supplemental briefs.

Having reviewed all briefs from the parties, and having heard oral argument from counsel, this Court concludes that issue preclusion applies here such that the issue of whether Section 747 preempts the Ohio Dealer Act is "forever settled" as to Chrysler, Spitzer, and Fred Martin.  That is because: 1) the precise issue (whether Section 747 preempts the Ohio Dealers Act) was raised and actually litigated in the CDA; 2) that determination was necessary to the outcome of the prior proceeding; 3) the prior proceeding resulted in a judgment on the merits (this district court's declaration that Section 747 does not preempt the Ohio Dealer Act); and 4) the party against whom estoppel is sought (Spitzer) had a full and fair opportunity to litigate the issue, it just chose not to appeal the district court's preemption ruling.

> ### 4.    Spitzer's "Fairness/Equity" Arguments Are Foreclosed By Supreme Court Authority.

In opposing the relief requested by Chrysler, Spitzer has argued that "fairness" and "equity" support denying that relief and support an affirmative ruling that the Ohio Dealer Act is preempted by Section 747.  (*See* D.E. No. 21 at Pg ID 226).  Spitzer argues that it is unfair that it will have to go through a protest proceeding after prevailing in its Section 747 arbitration when

other dealers, in other states, will not have to do so.  This Court is not without some degree of sympathy for Spitzer's position.  If Spitzer had appealed this Court's preemption ruling, then the Sixth Circuit may well have ruled that Ohio's state-law dealer act is preempted by Section 747. Because it failed to appeal that ruling, Spitzer will have to go through a protest proceeding before it can be added to the dealer network, when similar dealers (who prevailed in Section 747 arbitrations) in Michigan and Nevada will not have to go through protest proceedings.

But in *Federated Department Stores, Inc.* the Supreme Court made two points that are relevant to the situation before the Court and foreclose Spitzer's fairness argument.  *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394 (1981).

First, in discussing the doctrine of res judicata, the Court explained that "the res judicata consequences of a final, unappealed judgment on the merits" is not "altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." *Id.* at 2428.  Thus, the fact that Spitzer may have prevailed had it appealed the preemption ruling as to the Ohio Dealer Act in the CDA does not change the fact that Spitzer is now precluded from relitigating that issue because it did not appeal that ruling.

Second, the Supreme Court explained that it "recognizes no general equitable doctrine" which "countenances an exception to the finality of a party's failure to appeal merely because his rights are 'closely interwoven' with those of another party" who did appeal the issue in question and prevailed.  *Id.* at 2429. The Court noted that the parties that failed to appeal the ruling at issue in that case sought "to be the windfall beneficiaries of an appellate reversal procured by other independent parties, who have no interest in" their case.  The Court also noted that it was "apparent that respondents [had] made a calculated choice to forgo their appeals." *Id.*

26

Finally, in rejecting the "simple justice" and fairness rationale of the Ninth Circuit, the

Supreme Court stated:

> The Court of Appeals also rested its opinion in part on what it viewed as "simple justice." But we do not see the grave injustice which would be done by the application of accepted principles of res judicata. "Simple justice" is achieved when a complex body of law developed over a period of years is evenhandedly applied. The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply "no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*." *Heiser v. Woodruff*, 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946). The Court of Appeals' reliance on "public policy" is similarly misplaced. This Court has long recognized that "[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Baldwin v. Traveling Men's Assn*., 282 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931).  We have stressed that "[the] doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts...." *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299, 37 S.Ct. 506, 507, 61 L.Ed. 1148 (1917). The language used by this Court half a century ago is even more compelling in view of today's crowded dockets:
>
>> "The predicament in which respondent finds himself is of his own making .... [W]e cannot be expected, for his sole relief, to upset the general and well-established doctrine of *res judicata*, conceived in the light of the maxim that the interest of the state requires that there be an end to litigation-a maxim which comports with common sense as well as public policy. And the mischief which would follow the establishment of precedent for so disregarding this salutary doctrine against prolonging strife would be greater than the benefit which would result from relieving some case of individual hardship." *Reed v.  Allen*, 286 U.S., at 198-199, 52 S.Ct., at 533.

*Id*. at 401-402.

Accordingly, the Court rejects Spitzer's fairness and equity arguments.  There is no

equitable exception to res judicata that changes the result when a party fails to appeal just

because he has a similar plight to another party who did appeal and prevailed.  Moreover, as was

27

the case in *Federated Dept. Stores*, the record reflects that Spitzer made a calculated choice to forego an appeal of the preemption ruling as to the Ohio dealer act, deciding to go forward with the protest proceeding rather than appeal.  (*See* D.E. No. 21-3 at Pg ID 318, statements made in oral argument before the Sixth Circuit, wherein Spitzer's counsel stated "we didn't appeal Judge Cox's [preemption] decision" and explaining "We feel we have such a strong position" that "we just want to get on with it" "so we just took the position, look, we'll deal with the protest laws of Ohio.").

### III.   An Order Enjoining Spitzer From Challenging Or Relitigating This Court's Preemption Ruling In The Ohio Protest Proceeding Is Not Barred By The Anti-Injunction Act.

In addition to the requested declaration, Chrysler's Complaint also asks this Court to issue an "injunction preventing Spitzer from challenging or relitigating this Court's Judgment that Section 747 does not preempt the Ohio Dealer Act."

In its motion, Chrysler anticipated that Spitzer may argue that the Anti-Injunction Act prevents this Court from issuing the injunction requested by Chrysler.  (*See* D.E. No. 22 at Pg ID 349).  It argues that "because the Ohio Protest Proceeding currently pending before the Ohio Motor Vehicles Dealer Board is an administrative proceeding," the Anti-Injunction Act does not bar this Court from "enjoining Spitzer from challenging the preemption issue in that forum." (*Id.*).  Chrysler also notes that "no proceedings before any Ohio state court have been initiated" and, therefore, it is not asking this Court to enjoin anything in relation to a state-court proceeding.  (*Id.*).

In response to Chrysler's motion, however, Spitzer does not argue that the Anti-Injunction Act prevents this Court from enjoining Spitzer from relitigating the preemption issue

28

in the Ohio Protest Proceeding.  (*See* D.E. No. 26 at Pg ID 468, arguing the Anti-Injunction Act is "irrelevant").

Moreover, the Court agrees with Chrysler that the Anti-Injunction Act does not prevent this Court from enjoining Spitzer from relitigating the preemption issue in the Ohio Protest Proceeding, which is an administrative proceeding.  The Anti-Injunction Act provides:

> A court of the United States may not grant an injunction to stay *proceedings in a State court* except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283 (emphasis added).  The Sixth Circuit has held that the Anti-Injunction Act "does not apply to state administrative proceedings."  *Six Clinics Holding Corp., II. v. Cafcomp Sys., Inc*., 119 F.3d 393, 398 (6th Cir. 1997) (citing *American Motors Sales Corp. v. Runke*, 708 F.2d 202, 204 (6th Cir. 1983)).  Thus, the Anti-Injunction Act does not bar this Court from issuing an order enjoining Spitzer from retlitigating the preemption issue in the Ohio Protest Proceeding.

## CONCLUSION & ORDER

For the reasons set forth above, **IT IS ORDERED** that the motions filed by Chrysler (D.E. No. 22) and Fred Martin (D.E. No. 18) are **GRANTED** to the extent that the Court **DECLARES** that:

1)  The laws of the Ohio Dealer Act (Ohio Rev. Code § 4517.43) remain in full force and effect with respect to Spitzer and the Ohio Protest Proceeding; and

2)  Spitzer is hereby **ENJOINED** from challenging or relitigating this Court's ruling that Section 747 does not preempt the Ohio Dealer Act, in either the Ohio Protest Proceeding or in federal court.

29

**IT IS FURTHER ORDERED** that the motion filed by Spitzer (D.E. No. 21) is

**DENIED** in its entirety.

**IT IS SO ORDERED**.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  February 8, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on
February 8, 2017, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager